| | |
|---|---|
| FREDDIE E. JUDD, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 2:16-cv-00062 ) CHIEF JUDGE CRENSHAW |
| CITY OF BAXTER, TENNESSEE, et al., | ) ) |
| Defendants. | ) |

# MEMORANDUM OPINION

When 76-year-old Freddie Judd attempted to save his store from burning to the ground, seven-months-pregnant City of Baxter Police Department Officer Maggie Bennett pulled him to the ground and attempted to handcuff him while Putnam County paramedic Robert Haney put his knee on Judd's back to attempt to subdue him. That incident led to Judd filing this action under 28 U.S.C. § 1983 against Bennett and Haney, alleging false arrest and excessive force.[1] Before the Court are Bennett's and Haney's Motions for Summary Judgment. (Doc. Nos. 38, 41.) For the following reasons, Haney's Motion is granted in part and denied in part, and Bennett's Motion is denied.

I. Material Facts

Judd bought the L & J Market in Baxter, Tennessee, about forty years ago, and owned it until 2014, when he transferred the store's ownership to his girlfriend Sheila Scott. (Doc. No. 48-1 at 7.) He continued to work in the meat department. (Id. at 7.) On August 29, 2015, while Judd

---

[1] All claims against the City of Baxter, Tennessee; Putnam County, Tennessee; and Danny Holmes have been dismissed, as have all state law claims against Maggie Bennett and Robert Haney. (Doc. No. 59.)

and Scott were having dinner, a neighbor informed them that the store was on fire. (Id. at 15; Doc. No. 50 at 1.) Judd grabbed the store's keys and they drove to the fire. (Doc. No. 50 at 1-2.)

When Judd arrived, at least two fire engines, two Putnam County ambulances, one of which was maintained by Haney, and Bennett were on the scene, along with a number of civilian onlookers. (Id. at 2.) Judd was intently focused on saving the burning store. (Doc. No. 48-1 at 41.) He did not pay attention to anyone else, and did not notice if anyone else tried to talk to him. (Id.) He remembers attempting to give his keys to Bennett to give to the firefighters so that they could open the door, but she would not take the keys. (Doc. No. 41-1 at 15.) Instead, she "grabbed [him] and [threw him] in [the] gravel." (Id.) At least one eye witness account confirmed Judd's version, that he walked up to Bennett, screamed that he had the keys, and then Bennett threw him to the ground without warning. (Doc. No. 48-6 at 16-17, 20-25.) Once on the ground, Haney put his knee in Judd's back to assist Bennett's efforts to put handcuffs on Judd. (Id. at 18; Doc. No. 48-2 at 8.) The police chief ultimately decided not to press charges against Judd. He was released and taken to the hospital to examine his injured elbow. (Doc. No. 49 at 1-2.)

II.     Analysis

Bennett and Haney move for summary judgment on the basis of qualified immunity. The Supreme Court set forth the standard for analyzing whether a government official is entitled to qualified immunity:

> In [Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151 (2001)], this Court mandated a two-step sequence for resolving government officials' qualified immunity claims. First, a court must decide whether the facts that a plaintiff has alleged (see Fed. Rules Civ. Proc. 12(b)(6), (c)) or shown (see Rules 50, 56) make out a violation of a constitutional right. 533 U.S., at 201, 121 S.Ct. 2151. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. Ibid. Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right. Anderson, at 640, 107 S.Ct. 3034.

Pearson v. Callahan, 555 U.S. 223, 232 (2009). In evaluating if a defendant is entitled to qualified immunity, the Court must adopt "the plaintiff's version of the facts . . . unless the plaintiff's version is 'blatantly contradicted by the record, so that no reasonable jury could believe it.'" Soudemire v. Mich. Dept. of Corr., 705 F.3d 560, 565 (6th Cir. 2013) (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)). The plaintiff "has the burden to prove that a right is clearly established." Everson v. Leis, 556 F.3d 484, 494 (6th Cir. 2009) (citing Barrett v. Steubenville City Sch., 388 F.3d 967, 970 (6th Cir. 2004)). When, on summary judgment, "the legal question of immunity is completely dependent on which view of the disputed facts is accepted by the jury," then summary judgment must be denied. Humphrey v. Mabry, 482 F.3d 840, 846 (6th Cir. 2007) (quoting Brandenburg v. Cureton, 882 F.2d 211, 216 (6th Cir. 1989)).

A. Excessive Force

Judd brings an excessive force claim against Bennett for forcing him to the ground and against Haney for jabbing his knee in Judd's back. To determine whether the use of force was excessive, courts "apply an objective reasonableness test, looking to the reasonableness of the force in light of the totality of the circumstances confronting the defendants, and not to the underlying intent or motivation of the defendants." Brown v. Lewis, 779 F.3d 401, 418 (6th Cir. 2015) (quoting Burgess v. Fischer, 735 F.3d 462, 472 (6th Cir. 2013)). Courts evaluate three factors to determine the objective reasonableness of the use of force, evaluating the factors from the perspective of a reasonable officer at the scene: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officer or others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." Martin v. City of Broadview Heights, 712 F.3d 951, 958 (6th Cir. 2013) (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)).

As to Bennett, the legal question of immunity is completely dependent on which view of the disputed facts is accepted by the jury, thereby making summary judgment inappropriate. The jury may agree with Bennett's version of the facts that she believed Judd was trying to punch her and she therefore used the "force continuum" (Doc. No. 38-2), which may make the takedown of Judd not excessive. However, based on the cited portions of the record in the two Statements of Undisputed Facts (Doc. No. 49 at 3-5; Doc. No. 50 at 7-10), it does not appear any eyewitnesses agreed with Bennett's recollection of the facts. If the jury believes Judd that he walked (or ran) to Bennett, tried to hand her the keys to the store, and Bennett grabbed his arm and threw him to the ground, a jury may find that excessive. See Brown, 779 F.3d at 419 (denying qualified immunity to an officer who threw a compliant detainee out of her car to the ground and kneeled on her back in an effort to handcuff her). There is no question that the "'right to be free from physical force when one is not resisting the police' was clearly established" when the incident occurred. Crawford v. Geiger, 656 F. App'x 190, 204 (6th Cir. 2016) (quoting Wysong v. City of Health, 260 F. App'x 848, 856 (6th Cir. 2008)). Based on these disputed material facts, Bennett is not entitled to qualified immunity on Judd's excessive force claim.

The same is true for Haney. In evaluating whether Haney violated Judd's "right to be free from physical force when one is not resisting the police," Judd alleges that after Bennett forced Judd to the ground, Haney "pounced on [Judd], driving [Haney's] knee into Judd's back" in order to assist Bennett with handcuffing Judd. (Doc. No. 48 at 8 (citing Doc. No. 48-6 at 18; Doc. No. 48-3 at 19)). This is supported by Scott's testimony, that the "EMS worker jumped on [Judd's] back and [Haney and Bennett] handcuffed him." (Doc. No. 48-2 at 8.) Judd alleges that Haney's actions broke his arm. (Doc. No. 48-1 at 18.) In evaluating the three City of Broadview Heights factors, there was no crime at issue, Judd was on the ground with Bennett on top of him, so there

4

was no threat to any officer, and Judd was not actively trying to resist arrest. Taking Judd's version of facts as true, a reasonable jury could find that Haney's actions constituted excessive force.

B. False Arrest

Bennett and Haney also move for summary judgment on Judd's false arrest claims. To prove false arrest, Judd must prove that the "arresting officer lacked probable cause to arrest the plaintiff." Sykes v. Anderson, 625 F.3d 294, 308 (6th Cir. 2010) (quoting Voyticky v. Vill. Of Timberlake, Oh., 412 F.3d 669, 677 (6th Cir. 2005)).

Bennett does not address the false arrest claim in her principle brief (Doc. No. 39) or reply brief (Doc. No. 56) despite Judd raising it in the Complaint (Doc. No. 1 at 4) and his Response to the Motion for Summary Judgment (Doc. No. 48). This alone precludes summary judgment on the claim. See FED. R. CIV. P. 56(a) (requiring a party seeking summary judgment to identify "each claim or defense . . . on which summary judgment is sought."). Nevertheless, when viewing the facts in the light most favorable to Judd, Bennett does not identify why she believed she had probable cause to arrest Judd. She is not entitled to summary judgment on this claim.

Haney argues he is entitled to qualified immunity because he is not an "arresting officer," as required in Sykes. He argues that Bennett had already seized Judd when she grabbed his arm and pulled him to the ground, and Haney's assistance with the handcuffing occurred after the seizure already took place. Construing the facts most favorably to Judd, Bennett, not Haney, made the decision to arrest Judd. The Seventh Circuit held that a paramedic generally does not have authority to decide whether to arrest a person, and if the paramedic does not participate in the decision to arrest the person, he cannot be held liable for false arrest. Sheik-Abdi v. McClellan, 37 F.3d 1240, 1248 (7th Cir. 1994). In Sheik-Abdi, after the plaintiff invited a paramedic inside his home, the paramedic invited the officers inside the home, acquiesced in the officers' decision to

arrest, and did not respect the plaintiff's right to refuse medical treatment. Id. at 1248. Regarding the decision to arrest, the Seventh Circuit held that while the police based their decision on the information they received from the paramedic, "the police independently determined that probable cause existed to arrest [the plaintiff]." Id. at 1248; see also Thacker v. City of Columbus, 328 F.3d 244, 256-57 (6th Cir. 2003) (analyzing false arrest claims against officers and not paramedics in similar situation as Sheik-Abdi).

Similarly, here, Bennett made the decision to take-down and arrest Judd. Haney only assisted with the handcuffing. It is Judd's burden to prove that a right is clearly established. He has not met that burden here by proving that he has a right against false arrest when someone assists the arresting officer. Everson, 556 F.3d at 494. Haney is entitled to qualified immunity.

III. Conclusion

Haney's Motion for Summary Judgment (Doc. No. 41) is granted in part and denied in part. Bennett's Motion for Summary Judgment (Doc. No. 38) is denied.

The Court will enter an appropriate order.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE