IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| FREDDIE E. JUDD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VERSUS | ) | DOCKET NO. 2:16-cv-0062 |
| | ) | JURY DEMANDED |
| MAGGIE BENNETT | ) | |
| | ) | |
| Defendants. | ) | |

### RESPONSE OF DEFENDANT TO PLAINTIFF'S MOTION

### FOR NEW TRIAL AND FOR SANCTIONS.

### INTRODUCTION

The overwhelming preponderance of the evidence - - in fact, the clear and convincing evidence at the trial - - was that the Defendant did not use excessive force in violation of the Plaintiff's constitutional rights.

The Plaintiff had a full and fair trial. No credible evidence supported the Plaintiff's position in this case.

There was no evidence, either testimonial, or from a documentary standpoint, that alcohol or intoxication caused or contributed to any factor in this case.

### FACTS

The following witnesses were introduced at trial with the synopsis of their testimony:

1

1. **Sheila Scott**: Sheila Scott, the Plaintiff's long-time live-in girlfriend and the actual owner of the L & J Market testified by deposition[1] that the Defendant, Officer Maggie Bennett, did not "throw" the Plaintiff, Freddie Judd, to the ground - - but rather jerked him and he fell:

> "Q. And so Ms. Bennett grabbed him [Freddie Judd] by one arm –
>
> A. Uh-huh. [affirmative]
>
> Q. - - and said she was going to arrest him.
>
> A. Yeah.
>
> Q. And which arm did she grab him by?
>
> A. I don't know. She just slung him around. He fell on his right side.
>
> Q. All right. So when she grabbed his arm and pulled him, he fell.
>
> A. He fell."

(Deposition of Sheila Scott, pg. 32, lines 11-22, attached as Exhibit 1.)

> "Q. He fell.
>
> A. Yes, when she jerked him around.
>
> Q. She didn't throw him down to the ground?
>
> A. Oh, no, she don't throw him. She jerked him.
>
> Q. All right. And then he fell?
>
> A. Yes."

(Deposition of Sheila Scott, pg. 33, lines 1-7, attached as Exhibit 2.)

---

[1] Sheila Scott was deceased by the date of the trial.

2. **Freddie Judd:** Freddie Judd testified by deposition[2] and admitted that Officer Maggie Bennett had told him not to go near the store:

> "Q My question is did Ms. Bennett tell you not to go near the building?
>
> A. Yes, sir.
>
> Q. All right. And did you keep trying to go up to the building?
>
> A. Yeah. If everything you owned was there, wouldn't you be trying to do all you could to save it? Sure you would. That's just nature."

(Deposition of Freddie Judd, pg. 74, lines 6-13, attached as Exhibit 3.)

Mr. Judd admitted he defied Officer Bennett and went toward the store, anyway.

3. **Tom Brown:** Putnam County Fire Chief Tom Brown[3] testified that when he got arrived at the fire scene the fire was rapidly evolving with smoke low to the ground, and that he instructed Officer Maggie Bennett to "get him out of here" referring to the Plaintiff, Freddie Judd.

Chief Brown testified that his firefighters had already broken into the store and were about to make entry, so Mr. Judd's claimed offer of keys was irrelevant and meaningless. Chief Brown was a totally unbiased and unprejudiced witness.

4. **Robert Haney**: Paramedic Robert Haney testified that he had placed himself between Mr. Judd and the building and had told Mr. Judd to go back to a position of safety, but that Mr. Judd refused. Mr. Haney saw Officer Bennett tell Mr. Judd to go

---

[2] The Court permitted Mr. Judd to testify by deposition because of his age and infirmity.
[3] Chief Brown was Assistant Fire Chief at the time of this incident, but was in charge of this scene.

3

back from the scene. Mr. Haney saw Officer Bennett grab Mr. Judd's arm and observed Mr. Judd "swat" at Officer Bennett immediately prior to her pulling him to the ground.

     5.    **Officer Maggie Bennett**: Officer Maggie Bennett testified that she told Mr. Judd to get away from the store on multiple occasions. He refused. She advised him that if he did not back away from the building and go to where the other spectators were, she would take him into custody and set him in her patrol car for his own safety. When he refused, she grabbed his arm and he turned and she thought that he swung at her. At this time, she pulled him to the ground.

Mr. Judd admitted that Officer Bennett could have thought he had "swung" at her:

> Q.    Did you try to hit Ms. Bennett that night? Did you swing at her?
>
> A.    No, I ain't never hit a woman in my life. No way.
>
> Q.    Did you swing at her with your left fist?
>
> A.    No, I had the keys in my hand. **<u>She might have thought I was swinging at her,</u>** but I didn't swing at her." [Emphasis ours.]

(Deposition of Freddie Judd, pg. 108, line 14 -22, attached as Exhibit 4.)

     6.    **Danny Holmes**: Baxter Police Chief Danny Holmes. Chief Holmes did not witness the incident, and no mention of alcohol or intoxication was mentioned.

The Plaintiff introduced three alleged witnesses to the incident:

     1.    **Melvin Wheeler:** Melvin Wheeler testified that he had come to the store; peeked in the window; had gone back and was coming back toward the store.

Mr. Wheeler admitted he did not see what caused Mr. Judd to go to the ground. Accordingly, he could not corroborate any alleged excessive force.

2. **Ethan Shanks:** Ethan Shanks testified that Freddie Judd walked up behind Officer Bennett; said something; and she immediately threw him to the ground without saying anything to him. His testimony is contradicted by Freddie Judd; Paramedic Haney; Officer Bennett; Sheila Scott and Gary Shanks. Respectfully, it defies common sense that an officer would throw someone to the ground without saying anything, or giving them any warning at all.

3. **Gary Shanks:** The Plaintiff's last eyewitness was Gary Shanks. Gary Shanks is the father of Ethan Shanks. He testified that Officer Bennett - - in her 7 month pregnant condition - - picked Mr. Judd up off the ground - - to shoulder height - - and body slammed him to the ground. This testimony totally defies common sense that a 7 month pregnant individual could even perform such a feat.

He testified that this all occurred before the Fire Department arrived. This testimony is contradicted by Fire Chief Tom Brown; Paramedic Robert Haney; Officer Maggie Bennett; Freddie Judd; and Sheila Scott.

The testimony of both Ethan Shanks and Gary Shanks are contradicted by - - probably the one person who cared about Mr. Judd more than any other person - - his long time live-in girlfriend Sheila Scott, who testified that Officer Bennett did not throw Mr. Judd to the ground, but jerked him and he fell.

> "Q. He fell.
>
> A. Yes, when she jerked him around.

> Q. She didn't throw him down to the ground?
>
> A. **Oh, no, she don't throw him**. She jerked him.
>
> Q. All right. And then he fell?
>
> A. Yes." [Emphasis ours.]

(Deposition of Sheila Scott, pg. 33, lines 1-7, attached as Exhibit 2.)

Plaintiff also introduced two of Mr. Judd's daughters who knew no facts regarding the incident.

Defense Expert Phillip McClain did not touch on the issue of alcohol or intoxication.

Accordingly, in reviewing this testimony it can be seen that the clear and convincing evidence supports the testimony of Officer Bennett; Fire Chief Brown; and Paramedic Robert Haney and does not support the testimony of either Ethan Shanks, nor Gary Shanks.

The Plaintiff now claims that one sentence in the opening statement so corrupted the jury that the jury ignored the Court's instructions and charge, and all of the other evidence, and rendered a Defendant's verdict.

This defies common sense and asks the Court to believe that 7 jurors - - who were individually polled by the Court, totally ignored the Court's instructions before the trial; the Court's instructions at the close of the trial; and ignored the Court's repeated admonition that no statement by a lawyer is evidence.

The Plaintiff received a full and fair trial and did not carry the burden of proof on any issue.

## THE COURT'S INSTRUCTIONS.

At the commencement of the Trial – before opening statements – the Court advised the Jury that the statements of Counsel were not evidence and could not be considered as evidence.

During Plaintiff's Counsel's opening statement, the following was stated, in part:

> "Now, this is going to be a case of two different versions of the same facts. And when you have a case where you have one person that's saying one thing and then you have all these eyewitnesses saying another, you really need to look at people's credibility and their background. **The defendant is going to tell a story that Freddie Judd was in a drunken rage**, tried to punch her, **alcohol everywhere**. But then there will be the actual facts from the eyewitnesses you'll hear from the neighborhood, and you'll hear the medical records testimony, and everything else that proves all of that was not true. So when we're talking about credibility, let's talk about backgrounds. There's Maggie Bennett…".
>
> (Page 4, lines 9-21, attached as Exhibit 5.)

Plaintiff's Counsel reiterated this theme with the following statement:

> "The way she was trying to get out of what she did is she created a report that we will read to you that says, like I said, Freddie came back with a closed fist and he tried to take a swing at me. And then when he came back to swing again, I had to grab him and threw him to the concrete. He was slurring his words. **He was drunk.** He was belligerent. The problem is we can prove all that not to be true even without eyewitness testimony."
>
> (Page 9, lines 9-12, attached as Exhibit 6)

7

It was not the Defendant's position that Mr. Judd was drunk or in a drunken rage. To respond Defense Counsel stated that alcohol and intoxication were "red herrings" and had nothing to do with what transpired on the evening of the fire:

> "Look at the ---the records from Bethesda and Cookeville hospital in October of '16 will be there. And you know, while I don't think alcohol has a thing in the world to do with this, those records show that he had a past history of alcohol abuse. But that's nonsense. We're not trying to prove anybody used alcohol that night or was intoxicated, but they did smell alcohol on his breath. That's just a red herring. They want to make you think that that's what this lawsuit is about, and it doesn't have a thing in the world to do with it."

(Page 11, lines 22-25 and page 12, lines 1-6, attached as Exhibit 7.)

Defense Counsel mistakenly stated – in one sentence only – that in the past there was a history of alcohol abuse. The context of the entire statement was that this incident and entire lawsuit was not about alcohol, at all.

This Court interpreted this one sentence to be a violation of a portion of a ruling on various Motions in Limine from March 24, 2021. A recess was called and the Court ruled that this was a violation of the ruling, noted that no relief was sought by plaintiff's counsel, and asked that defense counsel and plaintiff's counsel fashion a curative instruction. Defense counsel handwrote one, submitted it to plaintiff's counsel, who approved, and it was submitted to the Court. The Court then recalled the jury and gave the following curative instruction:

> "Ladies and gentlemen of the jury, during Mr. Rader's opening statement he stated that Mr. Judd's medical records show he had a past history of alcohol abuse. That statement was improper. Mr. Judd's history of - - history of drinking alcohol, whether true or untrue, has no relevance to this case. And any statements about Mr. Judd's alleged history of using

8

alcohol is not at all relevant to the only issue in this case, which is whether Ms. Bennett used excessive force on Mr. Judd on August 29, 2015. Any even more, this reference to Mr. Judd's alleged past medical history is not evidence. Remember, I told you in the beginning of the case what the lawyers say is not evidence.

The reason I'm focusing on this specific statement is because the parties argued about this issue prior to trial and whether this evidence was relevant to the case. And I ruled before the trial that it was not.

Ladies and gentlemen of the jury, I hereby instruct you that whether Mr. Judd did or did not have a history of alcohol abuse is totally irrelevant to this case. You shall not consider it in any way in your deliberations. It was completely improper for Mr. Rader to have referenced his belief that Mr. Judd had a history of alcohol abuse. Again, that will be repeated in the final instructions." (Exhibit 8)

That concluded the first day of the trial, April 27, 2021

The Trial resumed the following day, April 28, 2021. The plaintiff presented his witnesses and rested his case mid to late afternoon.

There was absolutely no mention of past alcohol use by the plaintiff.

The defendant called Fire Chief Brown and Paramedic Robert Haney.

Again, there was no mention of past alcohol use by the plaintiff.

The trial recessed until the following day, April 29, 2021.

The defendant called its last two witnesses, Baxter Police Chief Holmes and Phillip McClain. Again, there was no mention of Mr. Judd's past alcohol use.

Accordingly, one sentence, two days previously was the one and only mention of any past alcohol use.

During final arguments there was no mention of past alcohol use.

Importantly, at trial – not a single witness mentioned past alcohol use.

9

Not a single documentary exhibit mentioned past alcohol use.

There was absolutely no evidence of past alcohol use.

The Court again charged the jury that statements of lawyers were not evidence and went so far as to specifically mention that the one sentence in the opening statement was not evidence and should not be considered.

> "The lawyers' statements and arguments are not evidence."

> ". . sometimes I ordered you to disregard things that you saw or heard, or I struck things from the record. You must completely ignore all of these things. Do not even think about them."

> "Evidence does not include any statement of the attorneys during the trial, including their opening and closing arguments."

> "Evidence also does not include answers, statements, or comments made by the attorneys that I ordered stricken. You are to treat anything that I struck from the record as if you had never heard it.

> For example, Mr. Rader stated in his opening statement that Mr. Judd's medical "records show he had a past history of alcohol abuse." That statement was improper and Mr. Judd's history of drinking alcohol, whether true or untrue, has no relevance to this case. And any statements about Mr. Judd's history of using alcohol is not relevant to the only issue in this case, which is whether Ms. Bennett used excessive force on Mr. Judd on August 29, 2015. And even more, this reference to Mr. Judd's alleged history is not evidence. Again, I instruct you that whether Mr. Judd did or did not have a history of alcohol abuse is totally irrelevant to this case, and you shall not consider it in any way in your deliberations." (Exhibit 9)

The Court specifically asked the plaintiff's attorneys if they had any objection to the charge. They affirmatively said that they did not. (Exhibit 10)

The Jury retired with the printed charge of the Court and all the exhibits.

10

The Jury reached a unanimous verdict and reported to the Court. The Jury was individually polled and each Juror stated that this was their own verdict.

The Plaintiff's Counsel raised no objection.

## LAW AND ARGUMENT

This Court recently considered alleged misconduct in *Snodgrass-King Pediatric Dental Associates, P. c. v. Dentaquest USA Insurance Co.* 295 F. Supp. 3d 843 (2018). In *Dentaquest* this Court observed:

> DentaQuest moves for a new trial because Snodgrass–King's counsel violated the Court's orders. (Doc. No. 414 at 14.) The relevant question under Rule 59 is "whether misconduct in a trial of a cause of action is of such a nature that a fair or impartial verdict cannot be reached." City of Cleveland v. Peter Kiewit Sons' Co., 624 F.2d 749, 756 (6th Cir. 1980) (quoting Travelers Fire Ins. Co. v. Ranney–Davis Mercantile Co., 173 F.2d 844, 851 (10th Cir. 1949) ). In determining whether "there is a reasonable probability that the verdict of a jury has been influenced by improper conduct, ... a court must examine ... the totality of the circumstances, including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, the manner in which the parties and the court treated the comments, the strength of the case (e.g., whether it is a close case), and the verdict itself." Id. (internal quotations omitted).
>
> [37]Here, Snodgrass–King's attorneys mentioned the contract value twice during the course of the trial, and the Court gave a curative instruction. (Doc. No. 404 at 225.) When the Court denied the motion for a mistrial, it noted that "we don't have ... consistent conduct regarding the $38 million reference." (Id. at 205); see McMillan v. Castro, 405 F.3d 405, 412 (6th Cir. 2005) ("[D]istrict courts should issue a curative instruction at the time counsel raises an objection to specific questioning or conduct that could be viewed as hostile or biased."). After weighing the City of Cleveland factors, and based on the Court's observations at trial as well as its review of the record itself, the Court does not believe the jury was prejudiced by the amount DentaQuest received from TennCare under their contract. As such, it conditionally denies a new trial on this ground.

*Snodgrass* at p. 871.

11

In the instant case there was one misstatement in the opening statement. There was no objection from Plaintiff's counsel at all, and certainly no request for a mistrial.

While no objection was raised after Defense Counsel's opening statement, the Court gave immediate emphatic curative instructions. There was not persistent "misconduct". In fact, just the opposite. No further mention of past alcohol use was ever mentioned by any lawyer, witness, or in any exhibit.

Moreover, a further curative instruction was given two days later in the final charge to the jury. Again, there was never any objection from Plaintiff's counsel, and no request for a mistrial was made.

In examining the totality of the circumstances, this was a single isolated sentence that, taken in context, clearly stated that alcohol was not an issue in this case. This statement had no relevance to the issues in this case. The context of the sentence, itself, verifies that past alcohol use was not relevant, but that alcohol use, in general was a "red herring" and had nothing to do with the incident before the Court. A review of the witnesses clearly demonstrates that alcohol was not an issue – it was the force used by Officer Bennett when she pulled Mr. Judd to the ground.

This Court used the factors from *City of Cleveland v. Peter Kiewit Sons' Co.,* 624 F. 2d 749 (1980). When these same factors are applied to this case, a new trial should not be granted.

In *Smith v. Rock-Tenn Services, Inc.*, 813 F. 3d 298 (2016) Judge John T. Nixon denied a motion for new trial based on misconduct. The Sixth Circuit affirmed:

12

> Finally, in Plaintiff's opening and closing statement, counsel stated that Plaintiff was unable to come back to work, lost his short-term disability insurance, "lost his job," and "ultimately had to leave work" due to the harassment. (R. 108, Trial Tr. at Page ID 1191–92.) To merit a new trial, Defendant must show "a reasonable probability that the verdict of the jury has been influenced" by the improper conduct of Plaintiff's counsel. *Innovation Ventures, LLC v. N2G Distrib., Inc.,* 763 F.3d 524, 542 (6th Cir.2014). We require a heightened showing of prejudice when, as here, a party fails to object. *Balsley,* 691 F.3d at 761. With only the hostile work environment claim proceeding to trial, counsel should not have made these comments. However, the district court cured this error by instructing the jury prior to opening and closing statements that the arguments of counsel are not evidence. *See id.* at 765 (heightened showing of prejudice unmet where improper comments were short relative to lengthy closing statement and district court issued an instruction that counsel's arguments were not evidence). Viewing the totality of the circumstances, we believe that the district court did not abuse its discretion in denying Defendant's motion for a new trial.

*Smith* at p. 315.

Significantly, as in the instant case – where there was only one inappropriate sentence, the Sixth Circuit observed: "However, the district court cured this error by instructing the jury prior to opening and closing statements that the arguments of counsel are not evidence. *See id.* at 765 (heightened showing of prejudice unmet where improper comments were short relative to lengthy closing statement and district court issued an instruction that counsel's arguments were not evidence).

The curative instructions by this Court – at two specific instances – coupled with the "one sentence" remark – as well as the instruction that "statements and arguments of counsel are not evidence" resolved any possible prejudice considering the context of this case.

13

In *Troyer v. T. John E. Productions, Inc.*, 526 Fed.Appx. 592 (2013), the Sixth Circuit was presented with an alleged attorney misconduct. In affirming the denial of a new trial the Sixth Circuit held:

> Plaintiffs also claim they are entitled to a new trial based on arguments and improper comments made by Defendants' counsel during the trial.
>
> "Misconduct by an attorney that results in prejudice may serve as a basis for a new trial. The burden of showing prejudice rests with the party seeking the new trial, and district courts have broad discretion in deciding whether to grant a motion for new trial." *Fuhr v. Sch. Dist. of Hazel Park,* 364 F.3d 753, 759 (6th Cir.2004) (internal quotation marks and citation omitted). Accordingly, Plaintiffs "must show both that the ... argument[s] w[ere] improper and that [they] w[ere] prejudiced by the impropriety, that is, that there is a reasonable probability that the jury's verdict was influenced by the improper argument[s]." *Id.* at 760.
>
> **\*\*3** [3] Plaintiffs have failed to demonstrate a reasonable probability that the jury was improperly influenced by the arguments and comments by Defendants' counsel during the trial. Plaintiffs' assertions alone are not enough to establish a reasonable probability of improper influence. *See id.* at 760. Moreover, the district court instructed the jury that "if what [the lawyers] say is different from what I say, you must follow what I say ... [t]he lawyers' statements and arguments are not evidence ..." To the extent there was any potential prejudice from the comments or actions, it was cured by the district court's instruction to the jury. *See Holmes v. City of Massillon,* 78 F.3d 1041, 1046–47 (6th Cir.1996) (holding that a motion for a new trial should be denied if prejudice is cured by jury instructions). A jury is presumed to have followed instructions correctly. *Conwood Co. v. U.S. Tobacco Co.,* 290 F.3d 768, 794 (6th Cir.2002), *cert. denied,* 537 U.S. 1148, 123 S.Ct. 876, 154 L.Ed.2d 850 (2003). Because the alleged improper arguments and comments did not adversely affect the fairness of Plaintiffs' trial, the district court did not **\*526** abuse its discretion in denying Plaintiffs' motion for a new trial on this ground.

*Troyer* at 525.

In this case this Court gave not one but two emphatic curative instructions. The jury is presumed to have followed these instructions correctly. It is respectfully

14

submitted that the plaintiff has failed to demonstrate a "reasonable probability" that the jury was improperly influenced by one sentence in the opening statement of defense counsel after two emphatic curative instructions – and after there was no proof or other mention of the matter over the two days of proof that commenced the following day.

Accordingly, the Plaintiff is not entitled to a new trial, and even the one sentence taken in context, demonstrates that it had no bearing whatever on the outcome of the case. The statement was in a paragraph indicating that alcohol and intoxication had nothing to do with this case. The Court, in the strongest possible manner, instructed the jury to disregard any past alcohol use of the Plaintiff, both before any evidence was introduced in the case and at the conclusion of the case.

No witness testified about any alcohol use of the Plaintiff, and no documentary evidence was introduced that contained any evidence of alcohol use by the Plaintiff that had any bearing on the circumstances of August 29, 2015.

Plaintiffs' attorneys claim that the fact that the jury only took about an hour to decide this case shows prejudice. It is respectfully submitted that the clear and convincing evidence in this case demonstrated that Officer Bennett did not use excessive force when Mr. Judd was pulled to the ground when he defiantly continued to approach the burning store in spite of the verbal warnings from Fire Chief Brown; Paramedic Haney and Officer Bennett. Mr. Judd acknowledged that he was instructed by Officer Bennett not to go to the burning store – but persisted:

> "Q My question is did Ms. Bennett tell you not to go near the building?

>     A. Yes, sir.
>
>     Q. All right. And did you keep trying to go up to the building?
>
>     A. Yeah. If everything you owned was there, wouldn't you be trying to do all you could to save it? Sure you would. That's just nature."

(Deposition of Freddie Judd, pg. 74, lines 6-13, Exhibit 3.)

## CONCLUSION

The plaintiff has failed to demonstrate a reasonable probability that prejudice resulted from one sentence, and that the jury disregarded the emphatic curative instructions given – not once, but twice.

It is respectfully submitted that the motion for a new trial and for sanctions should be denied.

>                             Respectfully submitted,
>
>                             MOORE, RADER,
>                             FITZPATRICK & YORK, P.C.
>
>                             By s/Daniel H. Rader, III B.P.R. No.002835
>                                 DANIEL H. RADER, III
>                                 Attorneys for Defendants
>                                 Maggie Bennett
>                                 P. O. Box 3347
>                                 Cookeville, TN  38502
>                                 (931-526-3311)

16

MOORE, RADER,
FITZPATRICK AND YORK, P. C.

By s/Randall A. York, B.P.R.No. 010166
    RANDALL A. YORK
    Attorneys for Defendants
    Maggie Bennett
    P. O. Box 3347
    Cookeville, TN 38502
    (931-526-3311)

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading was filed electronically on June 2, 2021. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

    Mr. Richard E. Collins
    Mr. Dan Stanley
    Stanley, Kurtz & Collins, PLLC
    Cable Piano Building
    422 S. Gay Street, Suite 301
    Knoxville, TN 37902

Dated this the 2nd day of June, 2021.

MOORE, RADER,
FITZPATRICK & YORK, P.C.

By s/Daniel H. Rader, III B.P.R. No.002835
    DANIEL H. RADER, III
    Attorneys for Defendant
    Maggie Bennett

17

Case 2:16-cv-00062   Document 206   Filed 06/02/21   Page 17 of 17 PageID #: 1949